IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02205-RBJ

TERESA PELKEY,

    Plaintiff,

v.

COLORADO DEPARTMENT OF LABOR AND EMPLOYMENT,

    Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant's Partial Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 21]. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons the motion is granted in part and denied in part.

### BACKGROUND

This case concerns the allegedly discriminatory treatment suffered by the plaintiff, Ms. Pelkey, at the hands of her employer, the Colorado Department of Labor and Employment (the "CDLE"). For purposes of this motion the Court assumes the truth of the well-pled allegations set forth in the First Amended Complaint [ECF No. 17].

On or about July 30, 2012, Ms. Pelkey began her employment with the defendant, the CDLE, in the Division of Unemployment Compensation/Insurance Customer Service Call

Center. Less than two months later, Ms. Pelkey was promoted to the position of Program Assistant II in the CDLE's Division of Workers' Compensation Medical Policy Unit.

In late November 2012, Ms. Pelkey underwent a breast biopsy. A few days later, on November 30, 2012, she discovered that she had breast cancer. She informed her supervisor, Christy Hunter, of the diagnosis on the same day.

According to Ms. Pelkey, beginning in December 2012 Ms. Hunter began giving Ms. Pelkey assignments and tasks that were not properly within her job description, failed to provide Ms. Pelkey with her 90-day performance evaluation, and interfered with Ms. Pelkey's job duties. Ms. Hunter also failed to respond to IT problems that Ms. Pelkey notified her about. As a result, Ms. Pelkey had to spend considerable time with the Office of Information Technology to accomplish her tasks, but Ms. Hunter rated her technology as 0% in her Employee Quality and Excellence Plan.

On or about December 12, 2012, Ms. Pelkey informed Ms. Hunter that she would be requesting FMLA leave for breast cancer surgery. Ms. Hunter responded that she did not believe that Ms. Pelkey was eligible for FMLA leave. However, the next day, the CDLE FMLA Coordinator, Karen Herrera, informed Ms. Pelkey that she would be eligible for FMLA leave on January 1, 2013.[1]

On or about December 17, 2012, Ms. Pelkey informed Ms. Hunter that she would need to be out of the office for medical appointments related to her breast cancer diagnosis on December 17, 18, and 19, for a total of roughly three hours. Approximately an hour later someone called

---

[1] Although Ms. Pelkey would have only been working for the CDLE for five months on January 1, 2013, she had worked for the Colorado Department of Revenue for seven months during the previous year. As such, on January 1, 2013 she would have worked for the same employer (the State of Colorado) for twelve months, entitling her to FMLA leave. *See* 29 C.F.R. § 825.110(b).

Ms. Pelkey's insurer and cancelled her doctor's appointment for December 18, 2012. In addition, someone changed the daytime contact numbers that Ms. Pelkey had on file with her insurer. Ms. Pelkey discovered this change after her general surgeon left a voicemail on her home answering machine advising her of the inaccurate phone numbers. Ms. Pelkey contends that this act made it impossible for her surgeons to contact her during daytime hours and caused a delay in her treatment.

Ms. Pelkey adds that on that same day – December 17, 2012 – Ms. Hunter and Paul Tauriello, the head of the Medical Policy Unit, informed HR that they wanted to terminate Ms. Pelkey's employment. Ten days later, on December 27, 2012, Mr. Tauriello requested that Ms. Pelkey take part in a meeting with him, Ms. Hunter, and Dan Sung, a manager in the Medical Policy Unit. Ms. Pelkey alleges that she was harassed, intimidated, falsely accused of dereliction of duty, verbally attacked, and bullied during this meeting. Ms. Pelkey contacted HR to complain about the harassment, but nothing was done.

Mr. Tauriello, Ms. Hunter, and Mr. Sung asked Ms. Pelkey to take part in another meeting on December 31, 2012 to discuss job expectations. The day before the meeting, Ms. Pelkey explained to the three of them that she was suffering from a disability under the Americans with Disabilities Act ("ADA") and stated that she was seeking an accommodation. She asked that the meeting scheduled for the next day address her request. That same day Ms. Pelkey retained the services of an attorney to counsel her with respect to the difficulties she was facing with the CDLE. At some point, Ms. Hunter told Ms. Pelkey that "[e]verything would have worked out just fine had you not gotten your attorney." First Amended Complaint ¶ 29.

The December 31, 2012 meeting did not address Ms. Pelkey's accommodation needs. Instead, Ms. Hunter and Mr. Sung advised Ms. Pelkey that she would be undergoing an immediate evaluation of her job performance. They also informed her that she was responsible for administrative support for the Project Data Management Unit even though this function was not in her job description.

On January 2, 2013, Ms. Pelkey emailed Mr. Tauriello, Ms. Hunter, and Mr. Sung, among others, asking when the interactive discussion regarding accommodations would occur. That same day another meeting was held to discuss supposed problems with Ms. Pelkey's job performance. In response, Ms. Pelkey notified Ms. Hunter and other management employees that she felt she was being discriminated and retaliated against as a result of her medical condition.

During the week of January 7, 2013, according to Ms. Pelkey, Ms. Hunter continued to interfere with Ms. Pelkey's job performance. She also began eavesdropping on personal phone calls between Ms. Pelkey and healthcare providers. On January 11, 2013, Ms. Pelkey was called into a meeting with the Director of the CDLE and an HR representative. Ms. Pelkey was handed a termination letter explaining that she was being let go for performance issues.

Ms. Pelkey brings four claims for relief: (1) sex discrimination in violation of Title VII; (2) discrimination in violation of the ADA; (3) discrimination in violation of the Rehabilitation Act of 1973; and (4) retaliation in violation of Title VII and the Rehabilitation Act of 1973. The defendant moves to dismiss the first and second claims as well as the retaliation claim insofar as it concerns Title VII. The defendant moves to dismiss the ADA claim for lack of subject matter jurisdiction and the Title VII claims for failure to state a claim. The plaintiff opposes the motion.

## ANALYSIS

### Americans with Disabilities Act

Rule 12(b)(1) concerns whether the Court has jurisdiction to hear the case before it.  "A motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)." *Neiberger v. Hawkins*, 150 F. Supp. 2d 1118, 1120 (D. Colo. 2001).  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  "Jurisdiction is a threshold question that a federal court must address before reaching the merits of a statutory question, even if the merits question is more easily resolved and the party prevailing on the merits would be the same as the party that would prevail if jurisdiction were denied." *Id.*  "[S]tatutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya*, 296 F.3d at 955 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Challenges to jurisdiction under Rule 12(b)(1) generally take one of two forms: facial attacks on the sufficiency of the allegations and factual attacks on the accuracy of those allegations. *Neiberger*, 150 F. Supp. 2d at 1120.  In reviewing a facial attack, the district court must accept the allegations in the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted).  When reviewing a factual attack supported by affidavits or other documents, the Court makes its own factual findings and, in doing so, does not convert the

motion into one brought pursuant to Fed. R. Civ. P. 56. *Id.* at 1003. The present defendant brings a facial attack. As such, the Court accepts the plaintiff's well-pled allegations as true.

The CDLE argues that the Court lacks jurisdiction to hear the ADA claim against it because it has not waived its Eleventh Amendment sovereign immunity with respect to the ADA, nor has Congress abrogated its immunity. Ms. Pelkey contends that the claim can move forward because she does not seek monetary damages under the ADA, only injunctive relief. The plaintiff misconstrues the doctrine of sovereign immunity.

The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit *in law or equity*, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI (emphasis added). Its plain language is clear: application of the sovereign immunity doctrine does not depend on the type of relief sought. As the Supreme Court has explained, "the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity. To . . . limit[] the strictures of the Eleventh Amendment to a suit for a money judgment[] would ignore the explicit language and contradict the very words of the Amendment itself." *Cory v. White*, 457 U.S. 85, 91 (1982); *see also Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1233 (D. Colo. 2009) ("If a state and its agencies are immune from suit under the Eleventh Amendment, such immunity applies regardless of the relief requested, thus protecting the state and its agencies from suits for both legal and equitable relief.").

The only exception to this rule (outside of a waiver of immunity) is the *Ex parte Young* doctrine, which allows for suit against state officials where the plaintiff seeks only prospective

equitable relief.  *See Neiberger*, 150 F. Supp. 2d at 1187.  Importantly, this exception is only applicable where the plaintiff has alleged an ongoing violation of federal law.  *See, e.g.*, *Lewis v. New Mexico Dep't of Health*, 261 F.3d 970, 976 (10th Cir. 2001); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998).  As the Supreme Court has explained, there is a strong federal interest in remedying **continuing** violations of federal law through prospective relief, whereas "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).  The plaintiff asks this Court to grant her leave to file a second amended complaint in order to add a state official as a defendant so that she can keep her ADA claim afloat.  However, there is no indication that an ongoing violation of federal law exists such that the *Ex parte Young* doctrine would apply here.  In fact, Ms. Pelkey does not seek prospective relief, such as future compliance with the law, but instead seeks reinstatement.  Reinstatement would remedy a past violation of the law, not enjoin an ongoing one.  *Cf. Edelman v. Jordan*, 415 U.S. 651, 664 (1974) (describing *Ex parte Young* as a "watershed case" in which the relief – enjoining the Attorney General of Minnesota to conform his future conduct to the requirements of the Fourteenth Amendment – was only prospective, as compared to the retroactive relief sought in the underlying case).

Furthermore, while the Court is typically liberal in permitting amendments to the pleadings, granting such leave seems futile here.  Ms. Pelkey has sufficiently pled a violation of the Rehabilitation Act of 1973, a cause of action that appears duplicative of her ADA claim.[2]  As

---

[2] Section 504 of the Rehabilitation Act of 1973 provides, in pertinent part: "No otherwise qualified individual with a disability in the United States. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

many courts have discussed, the ADA was enacted to extend the reach of the Rehabilitation Act, and as such the two statutes are typically to be interpreted and applied consistently. *See, e.g.*, *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998) ("[T]he ADA must be construed to be consistent with regulations issued to implement the Rehabilitation Act."); *Gonzagowski v. Widnall*, 115 F.3d 744, 746–47 (10th Cir. 1997); *Helen L. v. DiDario*, 46 F.3d 325 (3d Cir. 1995); Paul A. Race, J.D., M.D. & Seth M. Dornier, J.D., *ADA Amendments Act of 2008: The Effect on Employers and Educators*, 46 Willamette L. Rev. 357, 363 (2009).  For all of the reasons discussed above, the ADA claim is dismissed with prejudice.

### Title VII

In reviewing a 12(b)(6) motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor.  However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Allegations that are purely conclusory need not be assumed to be true. *Id.* at 681.  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

---

program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).  Notably, Congress has abrogated state sovereign immunity for alleged violations of this provision. *See* 42 U.S.C. § 2000d-7(a)(1).  Because the CDLE (allegedly) receives federal financial assistance in the form of federal funds, the plaintiff may assert a claim against it for violations of § 504 the Rehabilitation Act.

Under Title VII, it is considered an unlawful employment practice for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Ms. Pelkey argues that the discrimination she suffered pursuant to her disability – breast cancer – was a form of sex discrimination in violation of Title VII. The CDLE insists that this claim should be dismissed. First, the defendant argues that the plaintiff wrongfully attempts to assert a novel theory, a theory of discrimination which has never been recognized by the Tenth Circuit. But simply because a theory is novel does not mean it is implausible or otherwise deficient. Without innovative theories the law would fail to advance. This basis for dismissal is unconvincing at best.

Second, the defendant argues that the allegations are insufficient to support a conclusion that the CDLE discriminated against Ms. Pelkey based on her sex or because she suffered from breast cancer specifically. The Court agrees. In particular, Ms. Pelkey has not argued that she was treated differently than any other employee on the basis of her sex, even presuming that her disability serves as a stand-in for sex. For example, Ms. Pelkey has made no allegation that others similarly situated, such as coworkers suffering from any number of disabilities, were provided with accommodations while she was not. *See Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1354 (2015) (analyzing a claim of pregnancy discrimination under Title VII by asking whether others similarly situated were provided with accommodations that were refused to a pregnant, but not disabled employee where pregnancy served as a stand-in for sex). Nor has she alleged that after notifying her employer of her breast cancer was she treated any differently than her co-workers in a manner suggesting that the treatment was related to her sex. While I am

open to new and innovative theories of the law, there are no factual allegations suggesting that Ms. Pelkey was targeted specifically because she had breast cancer, or that she was otherwise treated differently because she was a woman. The Title VII claim must therefore be dismissed.

Finally, the defendant argues that Ms. Pelkey's retaliation claim should be dismissed in part as Ms. Pelkey fails to state a plausible claim that she was retaliated against for engaging in an activity protected by Title VII. A plaintiff makes out a prima facie case of retaliation under Title VII by showing "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (citation omitted). A plaintiff has engaged in protected opposition to discrimination under Title VII if she has "opposed any practice made an unlawful employment practice by [Title VII], or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.A. § 2000e-3(a). There are no allegations that Ms. Pelkey engaged in a protected activity under Title VII. Instead, the pleadings only state that Ms. Pelkey notified her managers that she felt she was being discriminated against as a result of her medical condition which, as noted above, does not appear to be a stand-in for her sex in this instance. Therefore, her retaliation claim must also be dismissed insofar as she alleges retaliation under Title VII.

### Costs and Attorney's Fees

The defendant seeks its costs and attorney's fees incurred in defending against the ADA claim. Defense counsel contends that she notified plaintiff's counsel about the jurisdictional bar

to the ADA claim but that the plaintiff refused to dismiss the claim, thereby acting in violation of 28 U.S.C. § 1927, which prohibits the unreasonable and vexatious multiplication of proceedings. The Court denies the requested relief.  If anything, the pursuit of the ADA claim shows a lack of expertise and experience with respect to sovereign immunity defenses, and the failure to voluntarily dismiss the claim shows a lack of good judgment.  However, it does not establish an unreasonable and vexatious multiplication of the proceedings.

## ORDER

For the foregoing reasons, Defendant's Partial Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 21] is GRANTED IN PART and DENIED IN PART as follows:

1. The first claim for relief – sex discrimination in violation of Title VII – is DISMISSED WITHOUT PREJUDICE;

2. The second claim for relief – discrimination in violation of the ADA – is DISMISSED WITH PREJUDICE;

3. The fourth claim for relief – retaliation in violation of Title VII and the Rehabilitation Act – is DISMISSED IN PART WITHOUT PREJUDICE.  It is dismissed without prejudice insofar as the plaintiff alleges retaliation in violation of Title VII; and

4. The request for costs and attorney's fees is DENIED.

DATED this 14th day of April, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge